STATE ex rel. Cynthia Denise RYAN, Appellant,

v.

David Alan RYAN, Respondent.

No. 25678.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 26, 2004.

Darrell L. Moore, Prosecuting Atty., and Douglas P. Bacon, Asst. Prosecuting Atty., Springfield, for appellant.

Timothy J. Harris, L.L.C., Springfield, for respondent.

KENNETH W. SHRUM, Judge.

David Ryan ("Father") was adjudged to be in contempt of court for failing to pay child support arrearage of $1,048.80. The court used the arrearage determination made by the Missouri Division of Child Support Enforcement ("Division") in an order dated November 30, 1994, to arrive at the arrearage amount. The court rejected the State's claim that an arrearage of $18,598.80 was the figure that should have been used in deciding what amount Father had to pay to purge himself of the contempt judgment. The State of Missouri ("State") appeals. This court affirms.

■■■ Child support orders are enforceable through civil contempt actions. *Wilson v. Whitney,* 81 S.W.3d 172, 185[25] (Mo.App.2002). "For purposes of collecting child support, the contempt power is limited to enforcing payment of amounts already due." *Sample ex rel. Sample v. Saffaf,* 87 S.W.3d 903, 907[9] (Mo.App. 2002). A judgment of civil contempt must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *Lyons v. Sloop,* 40 S.W.3d 1, 10[16] (Mo.App.2001).

In 1977, a Utah court dissolved the marriage between Cynthia Denise Ryan ("Mother") and Father. In part, the decree ordered Father to pay $150 per month child support for the parties' three children, i.e., $50 per month per child.

Ultimately, both Mother and Father moved to Missouri. In November 1994, Division's director, acting pursuant to section 454.476, entered an "administrative order on an existing order" that adjudicated Father's child support obligations under the Utah decree.[1] In this order ("1994

---

1. When a court order setting child support has previously been entered, section 454.476

AOEO"), Division's director found Father's child support arrearage under the Utah decree (excluding interest) was $4,001 as of December 1, 1994. The 1994 AOEO also recited that "[Division] is not enforcing the $50 per month per child current child support obligation for Boyce, Melayne and Angela because they appear to be no longer entitled to current support under Section 452.340. . . ."

Nothing filed with this court reveals that an appeal was taken from the 1994 AOEO. The caption of the 1994 AOEO does contain "Circuit Court Identifying No. CV 380–167DR." From this, it is reasonable to infer that Division filed the 1994 AOEO with the Greene County circuit clerk as authorized by section 454.490.[2]

Between 1994 and 2002, Father paid $2,952.20 on the arrearage, leaving a balance of $1,048.80 due per the 1994 AOEO. In 2001, however, Division's director again sought to enforce the child support obligation of Father. He did this by purporting to enter an "amended administrative order on an existing order" ("2001

AAOEO"), and cited section 454.476, RSMo (2000), as authority for doing so.[3] (Emphasis supplied.) In the 2001 AAOEO, the Director found Father owed $18,598.80 for past-due support. This order was filed with the circuit clerk and given the same identifying number as the 1994 AOEO, i.e., CV380–167DR. As before, apparently no appeal was taken from this administrative order.

In 2002, the State filed a request in the Greene County circuit court "for Missouri Registration of Foreign Support Order [the Utah decree] . . . pursuant to Section 454.958 for the purpose of . . . enforcement."[4] The "Registration Statement" recited that the child support arrearage was $18,598.80, i.e., the amount found due in Division's 2001 AAOEO. Father did not timely request a hearing on the proposed registration of the Utah decree; consequently, the registration order was "confirmed by operation of law" per section 454.961(b).[5] The "registration case" bears case number 102DR1205.

authorizes Division's director "to enter an administrative order in accordance with the court order," provided Director receives prescribed documentation about the court order, payment arrearage, and information about the obligor.

2. Section 454.490, RSMo (1994), provided that Director could file a copy of an order entered pursuant to section 454.476 with the circuit court. Once the order was docketed, it had "all the force, effect, and attributes of a docketed order or decree of the circuit court" for purposes of enforceability, including contempt. § 454.490.1.

3. We note here that the 1994 and 2000 versions of the statute do not materially differ. Further references to the statute will make no distinction regarding the versions.

4. In pertinent part, section 454.958 provides: "(a) When a support order . . . issued in another state is registered, the registering

tribunal shall notify the nonregistering party. The notice must be accompanied by a copy of the registered order and the documents and relevant information accompanying the order.
"(b) The notice must inform the nonregistering party:
(1) that a registered order is enforceable as of the date of registration. . . .;
(2) that a hearing to contest . . . the registered order must be requested within twenty days. . . .;
(3) that failure to contest . . . the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted. . . ."

5. Section 454.961(b) provides: "If the nonregistering party fails to contest the validity . . . of the registered order in a timely manner, the order is confirmed by operation of law."

On May 24, 2002, the State filed a motion in the "registration" case requesting that Father be held in contempt because of his refusal to make child support payments as ordered. The State alleged the arrearage was $18,598.80, "minus any amounts paid to the Family Support Payment Center or to [Mother]."

Ultimately, Father hired a lawyer to defend the contempt motion. In part, Father argued that because the 1994 AOEO found his arrearage to be $4,001, the State was collaterally estopped from enforcing the 2001 AAOEO that found he owed $18,598.80 in arrearage. The State countered that this defense was unavailable because Father failed to raise it at the time the foreign judgment was registered. The State based its argument on sections 454.963 and 454.966 which essentially provide that, after confirmation of a registered order, all defenses are precluded if they could have been raised at the time the order was registered.

The trial court found Father in contempt for failure to fully pay the $4,001 arrearage adjudged due via the 1994 AOEO; that Father had paid $2,952.20 since December 1, 1994, leaving a balance due of $1,048.80; and Father could purge himself of contempt by paying the $1,048.80 balance. It ruled the State was "barred from reliance on the July 27, 2001 administrative order" for two reasons: (1) the State was collaterally estopped from relying on the 2001 AAOEO due to the 1994 AOEO, and (2) the 2001 AAOEO order was "null and void." This appeal by the State followed.

We reproduce the State's sole point on appeal as follows:

"The trial court erred in allowing [Father] to raise the defense of collateral estoppel because § 4[5]4.966 RSMo states that confirmation of a registered order precludes further contest of the order with respect to any matter that could have been raised at the time of registration and collateral estoppel could have been asserted at the time of registration under § 454.963(5)."

■ Although the State characterizes this case as one of "first impression in ... Missouri," it presents this court with a mere twenty-two lines of argument in the argument section of its brief. Noticeably absent from the point relied on and argument is any assertion of error challenging the court's finding that the 2001 AAOEO is "null and void." For reasons explained below, this unchallenged finding concerning the 2001 AAOEO compels affirmance of this judgment. *See Landry v. Miller,* 998 S.W.2d 837, 840 (Mo.App.1999) (holding a mother, on appeal, must successfully challenge a trial court's finding that there was no substantial and continuing change of circumstances of the children or mother before she can succeed on her claim that the trial court erred in overruling her motion to modify custody).

The State appears to admit that the 1994 AOEO *adjudicated* all of Father's child support arrearage under the 1977 Utah decree and that none accrued after December 1, 1994. The State merely claims that the "listed amount of arrearage was in error" and Father owed $23,350 as of December 1, 1994. Apparently, Division's director tried to correct this "error" by entering an *"amended "* AOEO in 2001 and then filing it with the circuit clerk under the same case number assigned to the 1994 AOEO.[6] However, there was a statutory prohibition against this purported amendment. Specifically, section 454.500.5 provides:

---

**6.** We are confirmed in this view by the fact that in the 2001 AAOEO Division's director alleged he was acting pursuant to section 454.476.

"No order entered pursuant to section 454.476 shall be modifiable pursuant to this section, *except* that an order entered pursuant to section 454.476 shall be amended by the director to conform with any modifications made by the court that entered the court order upon which the director based his or her order." (Emphasis supplied.)

■ In sum, Division's director attempted to reopen and modify his own order without showing that the Utah decree had been modified. That was an act expressly prohibited by section 454.500.5.[7] Under the circumstances, the following is apropos:

" 'In the absence of statutory authority to an [administrative agency] to reconsider a decision already reached and imparted to the litigants, the argument that such a prerogative derives by implication or analogy avails even less. [W]here no statute vest[s] specific authority to reopen a decision, [an] administrative agency is without jurisdiction to undertake such an exercise.... [T]he authority of an administrative tribunal to set aside a final decision must clearly appear from the statute.' "

*State ex rel. Laidlaw Waste Systems, Inc. v. City of Kansas City*, 858 S.W.2d 753, 756 (Mo.App.1993) (quoting *Sheets v. Labor and Industrial Relations Commission*, 622 S.W.2d 391, 394 (Mo.App.1981)).

■ Acts taken by an administrative agency that exceed statutory authority, such as occurred here, are void *ab initio*. *See Cohen v. Mo. Bd. of Pharmacy*, 967 S.W.2d 243, 247–48 (Mo.App.1998); *Casey v. State Bd. of Registration for Healing Arts*, 830 S.W.2d 478, 480–81 (Mo.App. 1992). Such actions and orders are a legal nullity, binding no one and entitled to no respect. *Cf. In re Marriage of Boston*, 104 S.W.3d 825, 831[6,8] (Mo.App.2003).

Here, the trial court correctly found that the 2001 AAOEO was "null and void." Since it was a legal nullity, binding on no one and entitled to no respect, *Boston*, 104 S.W.3d at 831[6,8], the arrearage amount found therein could not validly be used as an arrearage figure in either the "registration statement" or in the confirmation of the registered order. To accept the State's argument would perpetuate a "legal nullity." On this record, the trial court did not err when it used arrearage amounts predicated on the 1994 AOEO to fashion its contempt judgment and "purge order." Point denied.[8]

The judgment of the trial court is affirmed.

RAHMEYER, C.J.-P.J., concurs.

BATES, J., concurs.

■

---

7. In fact, the Director attempted to render an order, having all the force and effect of a judgment when docketed with the circuit court, that was to supersede his own prior determination. Since a circuit court could not do so, then it follows that the Director cannot do so. *See* § 454.501.

8. Although "collateral estoppel" may have been a defense that had to be raised at the time the Utah judgment was registered, *see* §§ 454.963 and 454.966, we need not decide that issue. This follows because the basis for the arrearage determination in the registration order was the 2001 AAOEO and it was void *ab initio*.